CHARLES BUTLER *v.* THE CITY OF TOLEDO.

Where the corporate authorities of a city had, in pursuance of its charter, levied a local assessment on lots bounding on and near to certain streets, for the purpose of grading said streets, and, from mistake in the preliminary estimate of cost, and extraordinary expense attending the collection of said assessment, the assessment proved insufficient to discharge the cost and expenses; a subsequent amendment of the charter, authorizing a re-assessment on the same lots "sufficient in amount to meet said deficiency, and the cost and expenses of such re-assessment, and all other expenses incidental to said improvements," is not in contravention of any provision of the constitution of 1802, and is a valid law, binding on all property within its purview, although the owner may have acquired title intermediate the assessment and re-assessment.

Nor is such re-assessment invalidated by the fact, that a small part of the fund to be supplied has been expended in extending the grading somewhat beyond the strict line of the improvement expressly authorized, and into intersecting streets, where such extension was necessary to afford ingress and egress to and from the street authorized to be graded.

IN Chancery. Reserved in Lucas county.

The facts are stated in the opinion of the court.

*M. R. Waite,* for complainant:

1. The laws under which the re-assessment was made are retro-active, and operate to impair vested rights. *Dash* v. *Van Kleck,* 7 Johns. 506; *Good* v. *Zercher,* 12 Ohio Rep. 367; *Chesnut* v. *Shane's Lessee,* 16 Ohio Rep. 609; *Schooner Aurora Borealis* v. *Dobbie,* 17 Ohio Rep. 125.

The charter, as it originally existed, gave no power to re-assess. *Scooville* v. *The City of Cleveland,* 1 Ohio St. Rep. 126, 131.

2. If the fund, originally provided to pay the expenses of this work, has been misapplied, or improperly expended, no re-assessment can be made, on account of a deficiency, occasioned by reason of such misapplication, or improper expenditure.

The fund was improperly applied. 1st. The work on the grade has been largely over-estimated to the contractors, and the fund has in this way been misapplied and wasted. 2d. The interest upon the orders was improperly paid out of the fund; as were several accounts to the street commissioner, city clerk, city surveyor, printer and treasurer; and also the costs and attorney's fees in several suits in which the city was a party, and which were not prosecuted for the benefit of the fund charged. *Jonas* v. *The City of Cincinnati*, 18 Ohio Rep. 318.

3. The grading of Cherry, Walnut, Locust and La Grange streets, north of Summit, and Summit east of Elm, was not provided for in the ordinance for the improvement or in the contracts for the work; and the expenses of such grading were improperly paid out of the fund.

*Charles W. Hill* and *Ira E. Lee*, for defendant:

1. We maintain that the first assessment did not exhaust the power of the council to raise money for the improvement in question, by a discriminating tax upon this property.

Section 28th of the charter of 1837, gives

1st. Power to grade and otherwise improve streets, and to levy a special tax to defray the expenses thereof, by a discriminating assessment upon the land and ground bounding and abutting thereon, in proportion to benefits.

2d. It points out the mode of making the assessment.

2. If the power to re-assess under the old law was not adequate, and we are compelled to look to the amendatory acts of 1849 and 1851 for authority, then were those acts constitutionally applicable to the facts in this case? We contend that they were. They certainly were not *ex post facto*. The prohibition of *ex post facto* laws, in art. 8, sec. 16, of the constitution of 1802, appears in the same connection and is used in the same sense as that in the constitution of the United States, art. 2, sec. 9, and

in both cases they relate to crimes only, and have no reference or application to civil proceedings or private rights of property or contracts. We cite the following authorities as directly in point: *Calder* v. *Bull*, 3 Dallas 386; *Fletcher* v. *Peck*, 5 Cranch 138; *Ogden* v. *Sanders*, 12 Wheat. 266; *Satterlee* v. *Matthewson*, 2 Peters Rep. 380; *Watson* v. *Mercer*, 10 Peters 88; *Baugher* v. *Nelson*, 9 Gill 299; 2 Pick. 170; 7 Johns. 488; 1 Blackford 196; 6 Binn. 271; 1 J. J. Marshall 563.

The prohibition relates to crimes and punishments only, and not to criminal proceedings. *Perry* v. *The Commonwealth*, 3 Grattan 632.

In numerous instances under the constitution of 1802, the legislature found it necessary to pass retrospective laws *to compel men to do justice.* Those laws were resisted upon grounds as plausible and consistent, and a claim of rights not inferior to the complainant's in this case. But those laws were sustained by this court and the doctrine was here settled, that " retrospective laws that violated no principle of natural justice, but that, on the contrary, were in furtherance of equity and good morals, were not forbidden by the constitution of 1802." *Lewis* v. *McElvain*, 16 Ohio Rep. 347; *Johnson* v. *Beaty*, Ib. 97; *Bartholomew* v. *Bently*, 1 Ohio St. Rep. 37; *Kearny* v. *Buttles*, Ib. 362; and *Trustees of C. F. R. E. A.* v. *McCaughy*, 2 Ohio St. Rep. 152.

3. The amendatory acts of 1849 and 1851 do not operate to impair vested rights, but only to make those who have been benefited by the improvements, pay for them. Under this head reference is made to the following cases: *Mech. & Traders' Bank* v. *Debolt*, 1 Ohio St. Rep. 591; *Toledo Bank* v. *Bond*, Ib. 622; *Thomas* v. *Leland*, 24 Wend. Rep. 65; *Shaw* v. *Dennis*, 5 Gilman's (Ill.) R. 405; *Norwich* v. *Co. Comr's*, 13 Pick. 60; *Sawyer* v. *City of Alton*, 3 Scam. 127; *Vanderbilt* v. *Adams*, 7 Cowen 349; *Trustees of Paris* v. *Berry*, 2 J. J. Marsh. 483; *Scooville* v. *City of Cleveland*, 1 Ohio St. Rep. 126.

4. Complainant contends that the re-assessment covers items not properly chargeable against the " Vistula grade fund," which, as he says, were improperly expended, and that now, whatever

may be the deficiency, a re-assessment for a deficit thus occasion-
ed cannot be sustained. We insist that those matters are not
open for discussion, aside from the stipulated facts in the case.

The acts of the assessors (47 O. L. 207, 213, sec. 17) were
so far judicial as to conclude the complainant; and to this point
we cite, *The People* v. *The Mayor of Brooklyn*, 9 Barb. 542;
*Shaw* v. *Dennis*, 5 Gilman's R. 405, 417, 418; *U. S.* v. *Arre-
donto*, 6 Pet. 691; 16 Mo. Rep. 88; *Adams' Lessee* v. *Jeffries*,
12 Ohio Rep. 253, 257; 2 Bond. Just., p. 373, sec. 3097; 1
Greenl. Ev., p. 654, sec. 523; *Lessee of Payne* v. *Moorehead*,
15 Ohio Rep. 435, 443, 445; *Bank of Wooster* v. *Stevens*, 1
Ohio St. Rep. 233, 235.

5. But if we are wrong in saying that the complainant is con-
cluded by the action of the assessors, then we deny that the
assessment included too much.

6. We deny that the work on the grade was largely over-esti-
mated to the contractors, and the fund in that way misapplied and
wasted.

7. The interest on the orders issued was properly allowed,
after the money was due.

8. We deny that the complainant is entitled to any relief in
consequence of the work done in Cherry, Walnut, Locust and La
Grange streets, north of Summit, and in Summit east of Elm.
All along Summit street, and throughout the work, except along
the margin of the river, the "improvement" was a deep excava-
tion; and if what Mr. Waite claims was the whole Vistula grade,
had been executed alone, Summit street could not have been en-
tered except from the river.

9. We claim that the new law could add to the property
charges that would not have been authorized under the old. The
limit was subject to the discretion of the legislature. See author-
ities already cited.

BRINKERHOFF, J. This is a bill in chancery, originally filed
in the common pleas of Lucas county, for an injunction to re-
strain the city of Toledo from the collection of an assessment,
ordered by the corporate authorities of the city, on certain lots of

complainant, bounding on Summit and Water streets, for the purpose of paying the unpaid balance of the cost of grading said streets, and other expenses incidental to said improvement; and is reserved for decision here from the district court of that county.

It seems that in and prior to the autumn of 1843, ordinances had been passed by the city authorities, under their charter, ordering the grading of Water street to Lagrange street, and of Summit street to the easterly side of Elm street; but no provision was made for the grading of Summit street *east* of Elm street, or of the cross streets *north* of Summit. Preliminary surveys and estimates of the cost of the projected improvement, were made by the city engineer; contracts for the work were entered into; a local assessment on the lots bounding on and near to the improvement was made, to meet the estimated cost; and the work was done. The contracts having been made on the basis of a certain price per yard for excavation and embankment, it was found, on the completion of the work and its measurement by the city engineer, that the cost exceeded the preliminary estimate. In addition to this, the payment of the assessment was for a long time resisted by different owners of lots assessed, thus leading to the accumulation of a considerable amount of costs in court, attorney's fees, printer's bills, and interest—which the city authorities had resolved to allow—on the unpaid orders issued to contractors on the city treasury, and the like; so that a large deficit was found to exist in the amount necessary to meet the costs of the work and the expenses incidental to, and growing immediately out of, the improvement.

It being doubtful whether the city charter, as it then stood, would authorize a local re-assessment to meet this deficit, or whether the same would have to be met out of the general fund . of the city, application was made to the general assembly of the State, which, on the 29th of January, 1851, passed, among others, the following amendment to the charter :

Sec. 1.   " That it shall and may be lawful for the common council of the city of Toledo, in all cases of special assessment heretofore made, or hereafter to be made, for the grading, planking, paving

or other improvement of the streets, lanes or alleys, squares and public places in said city, where the same shall have proved or may hereafter prove inadequate, defective or insufficient, by reason of any error or defect in the proceedings of said council, or any of its committees or officers, or assessors, or insufficient in amount, to cause a new and further assessment to be made upon the property originally chargeable with the cost of said improvement, sufficient in amount to meet said deficiency and the costs and expenses of such re-assessment, and all other expenses incidental to said improvement, and to levy and collect the tax therefor, at any time in the year other than the time prescribed by the charter of said city, for collecting the annual taxes of said city, as well as at the times of collection of said annual taxes; and in case any person shall be dissatisfied with the re-assessment aforesaid, the same right of appeal shall be had, and in case of any appeal, the same proceedings shall be had as is hereinafter provided in the case of other assessments for improvements of streets," etc.   Ohio Laws, vol. 49, page 71.

And, on the 21st of July, 1851, the city council proceeded to re-assess, on the same lots before assessed, the aggregate sum of $9,086.36, that being the estimated amount of the deficiency before mentioned.

This aggregate deficiency is made up of the following items :

Orders outstanding.

Interest accrued and estimated to accrue, before tax can be collected.

For re-imbursement of general fund, for payments made out of it on expenses of this improvement, and interest.

Costs and law expenses.

Printing.

Compensation to city officers for services in the making of said improvements, in the litigation growing out of them, and in the levying and collection of the assessment and re-assessment.

And it is to restrain the collection of the aggregate re-assessment thus constituted, that this bill is filed.   It appears that the complainant became the owner, and acquired title under deeds of quit-claim, of a portion of the lots assessed, between the time of

the first assessment and of the subsequent re-assessment. It further appears, that of the total amount of orders issued to contractors for the work, amounting, without interest, to something over $33,000, the sum of $1,017.58 is for work done on Summit street east of Elm street, and on cross streets north of Summit, and therefore not expressly embraced in the terms of the city ordinances authorizing the assessment and re-assessment.

On this state of facts, it is claimed in behalf of the complainant,

1. That any local re-assessment on his lots, for the purpose of making up any deficiency in the amount of the original assessment, is unauthorized by law ; and this on the ground that the proceedings, and the laws under which they were had, are retroactive and operate to impair his vested rights.

To this claim we cannot assent. The amendment to the city charter, of January, 1851, clearly authorizes a re-assessment of some kind and to some amount, and is a valid law, binding on all persons and property within its purview, unless its provisions are found to be in contravention of the constitution of the United States, or of the State constitution of 1802, under which the amendment was enacted and these proceedings were had. This amendment is not an *ex post facto* law ; for such laws relate to crimes only, and constitutional provisions on the subject of them have no application to civil proceedings. 1 Blackstone's Com. 46 ; *Dash* v. *Van Kleck*, 7 J. R. 488–9. Nor does it impair the obligations of any contract. The constitution of 1802 contained no provision against retro-active or retrospective laws ; and such laws, passed under that constitution, have always been upheld, where they " violated no principle of natural justice," and were in furtherance of it. *Lewis* v. *McElvain*, 16 Ohio Rep. 347 ; *Trustees of C. F. R. E. A.* v. *McCaughy*, 2 Ohio St. Rep. 155. Here the property of the complainant had reaped the benefit of a local improvement, for the making of which the property was originally and justly liable to contribute. By a mistake in the preliminary estimate of cost—a thing of no rare occurrence, and affording no presumption of fraud—the fund first assessed proved to be insufficient. It is but just that he should

contribute ratably to supply the deficiency, and if he refuses, it is but just to compel him.   Nor do we see how any vested right is impaired by the fact of his purchase intermediate the assessment and re-assessment.   He voluntarily purchased lots in a young and thriving city, to the prosperity and growth of which, assessments for purposes of local improvement were absolutely essential, and which, as a reasonable being, he must have anticipated. He purchased his lots subject to any burden which the State might lawfully impose, and we cannot perceive how the vested rights of complainant are any more impaired than are those of every recent purchaser of real estate in Ohio, whose estate is now yearly taxed for the payment of interest and principal on a State debt contracted long before his purchase.

The complainant claims,

2. That, admitting an asssesment to make up the proper deficiency, if any, in the original fund to have been authorized by law, still this assessment is illegal, because the amount includes items not properly embraced within it.   And

First.  It is alleged that the original measurement by the city engineer of the work done, was erroneous, and too favorable to the contractor.   On the question of fact thus presented, and without going into a detail of the evidence on which our conclusion is based, we content ourselves with saying that the evidence fails to satisfy us of any substantial error in the original measurement.

Second.  It is contended that interest on outstanding orders ought not to be included in the amount of the re-assessment. The contracts for the work provide that the contractors " shall be paid in warrants of the mayor of said city, and shall be payable only out of the fund to be collected as aforesaid."   But surely the contractors had a right to expect that the fund would be collected within some reasonable time ; and when its collection was unexpectedly, and, to the contractors, ruinously delayed, we think the contractors had a legal right to demand interest on the dishonored warrants of the city; that the city authorities had a legal right to allow interest ; and that it is rightfully included in the re-assessment, as one of the " expenses incidental to said improvement."

Butler *v.* The City of Toledo.

The same may be said in respect to other items—such as costs, attorney's fees, printer's bill, and compensation of city officials for superintending the work, making measurements, defending suits instituted to restrain the collection of the assessment, and the levying and collection of the assessment. None of these items would have accrued had it not been for the improvement, and they are, we think, legitimately classed among the " expenses incidental " to it.

3. And finally, it is claimed that of the $33,096.07 of orders drawn for the cost of this improvement, the sum of $1,017.58 was on account of work done on Summit street east of Elm, and on the cross streets north of Summit, neither of which were embraced in the terms of either the ordinance directing the improvement or the contracts for the work.

We fully admit that it is essential to the validity of this re-assessment, that all the money to be collected under it, shall have been expended substantially in the improvement directed by the ordinance ; and we have not been free from embarrassment in our deliberations on this point. But, it satisfactorily appears in the evidence that the improvement in Summit street consisted almost entirely of *excavation,* varying in depth from three to six feet ; in consequence of which, and of the perpendicular cuttings thus made at the points of intersection with the cross streets north of it and with Elm street, all ingress and egress to and from that part of Summit street covered by the improvement, would have been effectually barred, had not the excavations been extended somewhat into the cross streets north of Summit, and into Summit east of Elm. Had the projected improvement been thus left, it would have been no improvement, but a detriment; and, on the whole, we are satisfied, from the nature of the improvement itself, and from the small proportion of the whole amount expended on them, that these extensions of the excavations beyond the strict line of the main work, were substantially and properly part and parcel of the main work, rather than improper and unauthorized departures from it.

*Injunction dissolved, and bill dismissed with costs.*