Gholson, J.
It is shown by the record that Edward Fen-wick, under whom the defendant claims, and Nicholas Gos-horn, made an agreement for the sale and conveyance, in fee simple, of the property in dispute. That the fee simple estate of the property was vested in the wife- of Goshorn, he having an interest in it for his life. To accomplish this agree *645 •ment for a sale and conveyance, which was for a full valuable 'consideration, a deed was prepared, but by mistake of the •scrivener, the name of Mrs. Goshorn was omitted in the granting clause, although it recites that the indenture was made between Nicholas Goshorn and Lorenia, his wife, of the first part, and the said Edward Fenwick of the second part; describes the conveyance to be of “ all the estate, right, title, interest, claim and demand of them, the said Nicholas Gos-horn and Lorenia, his wife, of, in, and to the said premises, .and every part thereof,” and conveys the same “ to the said Edward Fenwick, his heirs and assigns forever.” This deed was executed and delivered by the husband and wife, with the intention to convey to Fenwick the whole fee simple estate — the estate and interest of both husband and wife. In the belief that this had been done, the deed was delivered and accepted, and the purchase money paid and received. Except in the particular named, the deed was executed with the requisite formalities. The deed was executed and delivered in 1828, and upon its execution and delivery, and the payment of the purchase money, Fenwick entered into possession. Purcell, claiming under him, is still in possession. And the ■deed as executed, through mistake, and contrary to the intention of the parties, conveying to him an estate only for the life of Nicholas Goshorn, he brought his action to •have it corrected, so as to conform with the intention of the parties, and convey to him the whole fee simple estate. The question presented to us, and which has been ably and elaborately argued, is, whether such relief can be granted under the constitution and laws of this State.
It is admitted, that an act of the general assembly, in its terms, embraces the case, and authorizes the relief. That act, passed 17th April, 1857, provides:
“ That the supreme court, district courts, and common pleas courts and other courts of this State, having like original jurisdiction, shall be authorized and empowered to correct, amend, and relieve against any errors, defects or mistakes occurring in the deed, or other conveyance of any husband and wife heretofore or hereafter to be executed and intended *646 to convey or incumber the lands or estate of the wife, or her right of dower in the lands of her husband, in the same manner and to the same extent as the said courts are or shall be authorized or empowered to correct errors, mistakes or defects in the deeds of conveyance of any other persons.”
But it is claimed that this act, as a rule to govern this case, must be regarded as a retroactive law, not embraced in the proviso of the 28th section of article 2 of the constitution. That the act, as applied to this case, has retroactive operation ; and that independent of the act, the relief asked, could not be obtained, are points not disputed or denied. The inquiry, therefore, turns on the proper construction of the proviso to the 28th section. The general assembly has acted on the conviction that the proviso gave authority to make the enactment. Can we say that it did not ?
•The 28th section of article 2, is in these words :
“ The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts provided, however, that the general assembly may, by general laws, authorize courts to carry into effect the manifest intention of parties and officers, by curing omissions, defects and errors in instruments and proceedings, arising out of their want of conformity with the laws of this State, and upon such terms as shall be just and equitable.”
By this section, the power to pass retroactive laws is restricted to the class of cases included in the proviso. Effect is authorized to be given to the manifest intention of parties and officers, by curing omissions, defects and errors. The omission, defect, or error, must be in an instrument or proceeding. It is obvious, that the instrument or proceeding must be one, which, had there been no omission, defect, or error, would have carried into effect the intention of parties- or officers. If the instrument or proceeding be such, that in the absence of any omission, defect, or error, it would have been inoperative, then it can not be regarded as within the meaning of the proviso. For example, the written agreement of Lorenia Groshorn to convey her estate, she being a married woman, would have been inoperative and void, and *647 though, in one sense, an instrument, it could not be deemed such an instrument as was intended by the proviso. This is shown from the requisition, that the omission, defect, or error, must arise from the want of conformity of the instrument or proceeding, with the laws of the State. An instrument or proceeding, which, having no omission, defect, or error, would still not conform with the laws of the State, and, therefore, not carry into effect the intention, can not be one of those intended. The proviso proceeds on the assumption that the instrument or proceeding, but for the omission, defect, or error, would have conformed to the laws, and therefore have carried into effect the intention of the parties. It, therefore, does not extend to any instrument or proceeding, not authorized by the laws of the State, as a valid and effectual expression of the intention of the parties. It does not authorize the general assembly to give power or capacity to parties, not possessed when any instrument or proceeding was made or had. An attempt to do this, would come within the prohibition against retroactive laws.
The proviso refers to substantive matters, and contains qualifying expressions. The intention must be manifest; but how manifested, is not expressed. The courts, under a direction to find the intention, with a view to the correction of an omission or defect, in analogy to like cases, would not act unless the intention was manifest; and in view of this principle of law, it is probable the expression was used. It may happen, that a mere inspection of the imperfect instrument will show what is the omission, defect, or error, and make manifest the intention of the parties. But giving the strictest meaning to the expression “ manifest intention,” as applied to a written instrument, we think the courts are not confined to a mere inspection of the instrument as to which the omission, defect, or error, is alleged to exist, but are, at least, entitled to be placed in the same position, as if called on to construe and give effect to a perfect instrument. The object being to ascertain if there be an omission, defect, or error, in the instrument, which has prevented the manifest intention of the parties from being carried into effect,.the *648 court may look to the subject matter, the connection of the parties with it, and surrounding circumstances at the time of the execution of the instrument. “ For the purpose of applying the instrument' to the facts, and determining what passes by it, and who takes an interest under it,” it is said by an eminent judge, that evidence is admissible of “ every material fact that will enable the court to identify the person or thing mentioned in the instrument, and place the court, whose province it is to declare the meaning of the words of the instrument, as near as may be in the situation of the parties to it.” Parke B, 9 Cl. & Fin. 556. Adopting this rule, and without deciding whether, in such a case as the present, evidence of a different description, such as the declarations of the parties, either at the time of the execution of the instrument, or before or after that time, would be admissible, we think the intention of Lorenia Goshorn, to convey her estate, is manifest from the statement of the contents of the instrument, and her connection with the subject matter, admitted on the record, and that such manifest intention was not carried into effect, on account of the omission alleged in the pleadings.
If the court were entitled to know the fact that Lorenia Gos-horn held the fee simple estate in the premises, then the only object of her joining in the conveyance — the passing to the grantee that estate — became apparent; and the deed itself contained language showing an intent to convey all the interest of both husband and wife. These materials being proper and sufficient to show the manifest intention, the omission which prevented it from being carried into effect became patent on the face of the deed.
Another substantive matter in the proviso, and the qualifying expression, “ omissions, defects and errors in instruments and proceedings, arising out of their want of conformity with the laws of this State,” have been the subject of discussion. One effect of the qualifying expression has already been pointed out — its showing that the retroactive laws, which tha proviso permits, can only extend to instruments or proceedings which, but for their want of conformity with the laws of *649 -the State, would be valid and sufficient to effectuate the intention of parties. It is urged that the expression, “want of conformity with the laws of this State,” in view of former legislation and judicial decisions, restricted the omissions, defects and errors,to those occurring in the execution of an instrument ; that the laws of the State intended, were not laws .relating to instruments and proceedings by which parties and ■officers manifested an intention to convey property or accomplish other purposes, but those laws only which prescribed the ceremonies of execution.”
Only one instance out of several of the kind of legislation .-referred to, appears to have attracted attention, and may be . supposed to have led to the adoption of the provision of the -constitution. This was the act of 1835; although it is equally probable that the act of 1849 was also in contemplation. The act of 1835 had reference to an omission in the action of an officer, in taking the acknowledgment, by a married woman, -of a deed — the omission to certify .that “he read or made ■known the contents of such deed, before and at the time she .acknowledged the execution thereof.” The decisions were in .reference to the effect of that legislation.
Particular cases or instances lead to the adoption of general rules or principles. Many of the general rules of law are thus deduced from the decision of particular cases. The general rule may derive its authority from the particular cases. But when particular instances lead to the adoption of a general rule, in the shape of a legislative or constitutional provision, the authority for the rule has no such limit. The rule -is to be interpreted from the language employed in its enunciation, and that language, when clear and comprehensive, is not to be limited in view of the particular instances which maybe supposed to have led to the adoption of the rule. The instance which led, as is supposed, to the adoption of the proviso to the 28th section of article 2 of the constitution, was -the omission of an officer, in a proceeding connected with the ■complete execution of “the deed of a married woman. But ¡the language of the proviso, in its generality, extends not «only beyond such a case, but beyond the class of cases to *650 which it would be properly assigned. It extends, not only to» omissions of officers in proceedings connected with the execution of deeds, but to omissions, defects and errors in deeds— to the omissions not only of officers, but of parties. We should, therefore, look rather to the principle of justice and right, which the rule was intended to enforce by an application to past transactions, than to particular instances in which a like application had been made, though historically connected with the adoption of the rule.
The principle, in view of which the language of the proviso should be construed, would extend that language to cases-where parties competent to carry their intention into effect,, by an instrument or proceeding made or had in conformity with the laws of the State, attempt to do so, but fail on account of an omission, defect or error, and the intention being, manifest, justice and equity require that it should not be defeated by such omission, defect or error. The parties must-be competent, their intention must be manifest, it must be evinced by an act, by some instrument or proceeding though-imperfect from a want of conformity with the law, and the-relief must be upon just and equitable terms.
The words, “ want of conformity with the laws of this State,” in connection with omissions and defects in conveyances, had, at the time of the adoption of the constitution,, acquired no peculiar and restricted meaning. An omission in the execution, had not been distinguished from an omission in the body of a deed, except so far as it may be regarded to have been done, in the particular instances of legislation, to-which reference has been made. Language, both legislative- and judicial, had applied the words “ errors and defects,” to-deeds generally, and without regard to any such distinction.
The statute cited as the foundation of the action, and the constitutionality of which is now contested, was first passed in 1849, in the same language, with the omission of the words which give it a retroactive operation. The statute, it will-be observed, makes no such distinction, but speaks generally of “ errors, defects or mistakes occurring in the deed or other conveyance ” of any husband and wife. In the case of Carr *651 v. Williams, 10 Ohio, 305, the omission of the names of husband and wife as grantors in the body of a deed, had been spoken of as a defect in the deed, as presenting the question whether the “deed of a feme covert, not executed according to the statute, ” might be enforced. The statute was said to prescribe the mode in which a married woman may execute a-conveyance of her land. “ It directs that she and her husband shall join in the conveyance; and if this provision is-not complied with, then the deed stands, as it would at common law, absolutely void and inoperative as to her; and if a deed, the body of which was defective, was still to be treated as an agreement to convey, or as an imperfect conveyance, other provisions of the statute, equally essential, would be disregarded. The acknowledgment and separate examination would not be to such an instrument as the law contemplates.”
This language is inconsistent with the idea that there was, then, an established line of demarcation between errors and defects in the execution, and in the body of a deed ; the first being in the nature of errors of form, and the other errors of substance. On the contrary, it appears to have been considered that as to a married woman, that which is an indispensable requisite, either in the body or the execution of a deed, being omitted, the deed became inoperative and void. Indeed it is difficult to see how an error or defect in the one, would differ, either in legal effect, or in the moral obligation it might create, from an error or defect in the other, and why justice should not demand the correction of the one, as much as of the other. The deed, including its execution, is the mode which the law prescribes for carrying the intention of a married woman, to part with her land, into effect. The substance is the devolving the use and ownership of land; the executed deed is the form through which that substance is effected. If any essential part of that form be omitted, the substantial act intended is not accomplished.
It is evident that the distinction, which, for the reasons-stated, we can not admit, is the foundation of-the argument, which has been presented, to show that the legislative act should be disregarded, as not sanctioned by the principle *652 which, permits retrospective laws. For if there be no distinction between an error in the body and one in the execution of a deed, then the same principle which would permit a retrospective law to cure the one, would apply to the other.
The argument against the validity of the law, assumes that, as applied to this case, it interferes with vested rights ; that the married woman being bound by no contract, and her act being, as the law then stood, void and inoperative, her right to the property was left untouched, and that to take it away by subsequent legislation, would operate as a mere arbitrary -divestiture of title. This, it is said, even a provision of the constitution could not do. Upon so grave an inquiry as our right, in any case, to disregard a provision of the constitution, we do not think we are required to enter. For we think that the case which the argument assumes is not presented. The act of the married woman may, under the law, have been void and inoperative ; but, in justice and equity, it did not leave her right to the property untouched. She had capacity to do the act, in a form prescribed by law for her protection. She intended to do the act, in the prescribed form. She attempted to do it, and her attempt was received and acted on in .good faith. A mistake, subsequently discovered, invalidates the act; justice and equity require that she should not take advantage of that mistake; and she has, therefore, no just right to the property. She has no right to complain, if the law, which prescribed forms for her protection, shall interfere to prevent her reliance upon them to resist the demands of justice. She has no vested right to do wrong. Foster v Essex Bank, 16 Mass. 245, 273. As said in a recent case, •“ laws curing defects, which would otherwise operate to frustrate what must be presumed to be the desire of the party affected, can not be considered as taking away vested rights. Courts do not regard rights as vested contrary to the equity .and justice of the case.” State v. Newark, 3 Dutcher, 185, 197. “ Retrospective laws that violated no principle of natural justice, but that, on the contrary, were in furtherance of •equity and good morals,” have been repeatedly rustained in this State. Trustees of Cuyahoga Falls R. F. A. v. Mc *653 Caughy, 2 Ohio St. 152, 155; Butler v. The City of Toledo, 5 Ohio St. 225, 231; Lewis v. McElvain, 16 Ohio, 347, 355; Johnson v. Bentley, Id. 97, 103.
Our duty in this case is plain. We have a statute which' clearly required that the relief asked by the defendant in error should have been granted. The general language of the' constitution authorized the enactment of such a statute. If a doubt exists as to the intention in the use of that language,which is the most that can, we think, be properly claimed,.. such doubt does not authorize a court to disregard the statute. The rule is clearly established, that a case of doubt will not authorize a court to say that a legislative enactment conflicts-with a provision of the constitution.
There are other points taken in the pleadings which, as ■ they have not been pressed in the argument, we do not think require from us any remark.
We find no error in the judgment, and it must be affirmed.
Scott, C.J., and Sutlife, Peck and Brinkerhoff, JJ.,. concurred.