BOELLNER ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* CITY
OF MAUMEE ET AL., APPELLEES AND CROSS-APPELLANTS.

[Cite as Boellner v. Maumee (1974), 39 Ohio St. 2d 47.]

(Nos. 73-491 and 73-499—Decided July 3, 1974.)

48

*Mr. George E. Ferstle,* for Anthony B. and Edward A. Boellner.
*Mr. Benjamin F. Marsh,* for city of Maumee et al.

*Per Curiam.* A municipality which expends funds for improving a street may utilize R. C. Chapter 727 to recoup a portion of its expenditures. The procedure established therein involves the levying and collection of special assessments against property specially benefited by the project. However, the municipality can not assess its total expenditures. Omitting an exception not relevant to this case, R. C. 727.05 places the following limitation on a municipality's assessment powers:

"The municipal corporation shall pay such part of the total cost of improvements for which special assessments are levied under Sections 727.01 to 727.49, inclusive, of the Revised Code, as the legislative authority thereof deems just, which part shall not be less than one-fiftieth of the total cost of the improvement, and in addition thereto, the municipal corporation shall pay the cost of intersections * * *."

The present appeal involves the application of R. C. 727.05 to a special assessment levied by the city of Mau-

mee for a street improvement jointly financed by Lucas County and the city.[2]

The assessment method utilized by the city and approved by the Court of Common Pleas can be described as follows: The city subtracted $28,166.38 (the city's share of the total costs of the Anthony Wayne Trail-Michigan Avenue intersection) from $336,666.38 (the city's share of the total project costs under the 1963 agreement with the county). The resulting difference ($308,500) was used by the city as the starting point for its "Assessment Project"; that is, the city felt that $308,500 was "the total cost of improvements for which special assessments are levied," as that phrase is used in R. C. 727.05. To that amount, the city then applied the remainder of R. C. 727.05; it reduced the amount by 2 percent (1/50) of $308,500 and by $37,-871.08, the cost to the city of intersections other than the Anthony Wayne Trail-Michigan Avenue intersection. Of the amount remaining after these deductions, the city shouldered any costs above those attributable to improving Michigan Avenue in a manner consistent with the width and

[2]Since the street improvement in this case involved county participation in a project wholly within a municipal corporation, either R. C. Chapter 5555 or R. C. Chapter 5557 should have been utilized in commencing and financing this improvement. In fact, the initial Michigan Avenue improvement resolution passed by the county commissioners recited that the commissioners were proceeding "under the provisions of Sections 5555.02 and 5555.06 of the Revised Code of Ohio * * *." However, it appears that the financing provisions contained in R. C. 5555.41 and 5555.42 were ignored in this case. Instead, the county and the city apparently utilized the financing procedures contained in R. C. Chapter 5557. R. C. 5557.03 permits a municipality to assess abutting property owners for the city's share of the total costs of an improvement jointly financed by the county and the city. This section further provides: "Assessments shall be made in one of the methods provided for in the case of street improvements wholly within the municipal corporation, and under the exclusive control of the legislative authority." It is not clear whether this statutory language refers to the entire assessment procedures provided by R. C. Chapter 727 or only to the three "methods" or formulae specified in R. C. 727.01. This uncertainty persuades this court to accept, for the purposes of deciding the present appeal, the parties' assumption that R. C. 727.05 is the controlling statute in this case.

pavement thickness of a normal residential street. The result of these computations was a net total assessable amount of $146,093.97.

The Court of Appeals disagreed with the city's starting figure of $308,500. As stated by that court, "the total costs of the improvement for the municipal corporation of Maumee amounted to $156,666.38 * * *." This figure represented the actual cash flow from the city to the county, and was derived by subtracting from the city's original obligation of $336,666.38 the additional $180,000 which the county agreed to pay. The Court of Appeals then reduced the $156,666.38 figure by $16,003.31—the amount which the city agreed to pay as "adjustments" to its initial assessment figure[3]—and by $66,037.46—the city's share of all intersection costs. Its computations led the Court of Appeals to hold that the city, pursuant to R. C. 727.05, could assess property owners a total of $74,625.51. It is from this judgment that both parties appealed to this court.

The Court of Appeals was correct in holding that the total cost of the improvements for which the city could levy special assessments was $156,666.38, and that this was the figure from which the reductions mandated by R. C. 727.05 must be made. The obvious objective of special assessment statutes, such as those in R. C. Chapter 727, is to allow a municipality to reimburse its treasury for expenditures actually made. *Stockdale Borough* v. *Astle* (1963), 410 Pa. 257, 189 A. 2d 152. If a city were allowed to assess property owners for the total cost of an improvement, without reduction for funds received from other sources such as county, state or federal agencies, the city would reap a financial windfall at the expense of the assessed property owners. Such a result would also be contrary

---

[3]Both parties agree that since $16,003.31 is more than 1/50 of the total cost of the Michigan Avenue improvements, irrespective of which amount is used as the total cost figure, the city has complied with that part of R. C. 727.05 which requires a municipal corporation to pay at least 1/50 of the total cost of the improvements.

to the rule that a special assessment is valid only if the funds collected thereunder are used for the project for which the assessment was levied. See *Butler* v. *Toledo* (1855), 5 Ohio St. 225. Therefore, this court holds that the R. C. 727.05 phrase, "total cost of improvements for which special assessments are levied," means only those costs for which the city is responsible. In the present case, this was $156,666.38: $336,666.38, the amount for which the city was obligated under the initial county-city agreement, less $180,-000, the additional amount which the county agreed to pay.

In computing the costs of intersections, which were required to be deducted from the $156,666.38 figure under R. C. 727.05, the Court of Appeals considered only those intersection costs for which the city was responsible. The property owners contend that this was erroneous because the language in R. C. 727.05 is clear and unequivocal and, therefore, does not justify an interpretation that the phrase "cost of intersections" applies only to the municipal corporation's share of the total cost of intersections. This court rejects that contention. Just as the R. C. 727.05 phrase "total cost of improvements for which special assessments are levied" means only the total expenditure which the city is required to make, the R. C. 727.05 phrase "cost of intersections" means only those intersection costs which accrue to the city. When the city attempts to levy special assessments for a portion of its expenditures in an improvement project jointly financed by the city and another governmental body, the only expenses relevant under R. C. 727.05 are those actually incurred by the city. The expenses not borne by the city can not enter into the city's assessment computations. Adopting the property owner's argument on this issue would nullify the legislative determination, codified in R. C. 727.05, that when a city expends funds for a public improvement, all expenditures above 2 percent of its total outlay and not utilized for intersection improvements specially benefit certain property.

However, the record in this case indicates that the Court of Appeals assigned an inflated value to the city's

share of the total cost of intersections. The value used by the Court of Appeals, $66,037.46, reflected the city's share of intersection costs under the initial agreement reached in 1963. However, the county subsequently agreed to contribute an additional $180,000 for engineering and construction costs. Odell Bradshaw, an engineer and Director of Service and Safety for the city of Maumee, testified that "engineering and construction costs" would be included in the costs of intersections. The exact amount by which the additional contribution reduced the city's share of intersection costs is not ascertainable from the record, even though it would be incorrect to accept the city's contention that the additional funds completely paid for the city's intersection costs. It is, therefore, necessary to remand this cause to the Court of Common Pleas, with instructions that it conduct further proceedings to determine the actual cost of intersections paid by the city of Maumee in connection with the Michigan Avenue improvement project.

For the reasons stated above, that portion of the judgment of the Court of Appeals, that $156,666.38 is the total cost of the Michigan Avenue improvement for which the city can levy special assessments, is affirmed. That part of the judgment of the Court of Appeals, that $66,037.46 is the cost of intersections paid by the city and that $74,625.51 is the total amount to be assessed, is reversed. That part of the judgment of the Court of Appeals ordering that the city, its assessment board and proper officers recompute the assessment challenged in this case is also reversed, and the cause is remanded to the Court of Common Pleas for further proceedings in accordance with this decision.

*Judgment accordingly.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.