NINTH STREET COMMUNITY PAVING PROJECT COMMITTEE ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* CITY OF IRONTON ET AL., APPELLEES AND CROSS-APPELLANTS.

[Cite as Ninth Street Community Paving Project Commt. *v.* Ironton (1986), 22 Ohio St. 3d 25.]

(No. 84-1560—Decided January 29, 1986.)

*Spater, Gittes & Terzian, Frederick M. Gittes, Kathaleen B. Schulte* and *Robin A. Bozian,* for appellants and cross-appellees.

*Peck, Shaffer & Williams, Thomas A. Luebbers* and *Charles Cooper,* city solicitor, for appellees and cross-appellants.

*Per Curiam.* The first issue presented for our consideration is whether the appellees substantially complied with the notice provisions set forth in R.C. Chapter 727 in a manner satisfying due process, as a matter of equity. The appellees contend that they substantially complied with these requirements in notifying affected property owners of potential assessments arising out of the street projects. The appellant property owners counter that the record is replete with examples of either sloppily attempted notification or simply no notification at all, and that such amounts to a denial of due process. Within this notice issue, appellants contend that the appellees failed to file the profiles and plans of the projects with the clerk of city council in a timely manner as mandated by R.C. 727.12. The appellants further contend that the resolutions adopted by city council were undertaken before most property owners received the purported notice, and before the plans were finalized. Appellants submit that some properties were assessed an amount exceeding one-third of the county auditor's valuation for said properties, thus violating the strictures of R.C. 727.03. The appellees counter this assertion by contending that the valuations for the purposes of assessments are computed with respect to the actual value of properties, and not the valuations computed by the county auditor for taxing purposes.

With respect to this notice issue, as well as the other issues involved in the cause *sub judice,* principles of equity must be taken into account along with constitutional considerations of due process. The use of equitable principles is proper not only because appellants have sought injunctive relief, but also by virtue of this court's longstanding application of equity to real estate assessment controversies. See *Kellogg* v. *Ely* (1864), 15 Ohio St. 64, and *Steese* v. *Oviatt* (1873), 24 Ohio St. 248.

Our review of the record herein leads us to conclude that while the appellees' methods were less than perfect in apprising affected property owners of the proposed projects and assessments, the appellees did

substantially comply with the notice provisions contained in R.C. Chapter 727. As this court held in paragraph five of the syllabus of *Tone* v. *Columbus* (1883), 39 Ohio St. 281, persons who object to the levy of special assessments on the grounds that the assessment procedures used were defective, may be estopped from raising such objection as follows:

"Active participation in causing the improvement to be made will estop the party engaged therein from denying the validity of the assessment; but to create an estoppel from silence merely, it must be shown that the owner had knowledge: 1. That the improvement was being made; 2. That it was intended to assess the cost thereof, or some part of it, upon his property; 3. That the infirmity or defect in the proceedings existed which he is to be estopped from asserting; and, 4. It must appear that some special benefit accrued to his property from such improvement which it is inequitable, under the circumstances, he should enjoy without compensation."

The record reveals that some of the instant appellants participated in meetings and hearings held with respect to the Block Grant applications and the street improvement projects. Moreover, other property owners who had knowledge of the projects under the *Tone* standard are estopped from claiming that the assessments herein were void *ab initio*.

We find that appellees made a *bona fide,* albeit imperfect, attempt to notify property owners in the affected areas of Ironton by certified mail and by publication. In addition, we believe that the lower courts were correct in determining that the improvements made were within the common knowledge of the persons residing within the areas of the street projects. Our implementation of equitable principles to the matter at hand prevents the hypertechnical application of the notice provisions within R.C. Chapter 727, and compels us to affirm the finding of substantial compliance with respect to those provisions. Our holding of substantial compliance with respect to proper notice necessarily entails a rejection of appellants' due process argument. We therefore affirm the appellate court majority on this issue.

With regard to the issue concerning the lack of profiles and plans for the projects filed with the clerk of city council as required under R.C. 727.12, we are again faced with a technical error on the part of appellees. Nevertheless, we find that the appellees have substantially complied with the statute in issue. Appellees concede that the plans and profiles were not on file in the office of the clerk of council, since such an office did not exist at the relevant time in issue. However, appellees point out that such plans and profiles were in fact filed with the office of the city engineer. In any event, our review of the record reveals that not one person requested to see the plans or profiles of the projects. Therefore, we affirm the lower court's finding that a failure of exact compliance with R.C. 727.12 was non-prejudical to appellants.

We also reject appellants' argument that the assessments levied by ap-

pellees on certain properties exceeded the one-third limitation contained in R.C. 727.03. The appellants' argument is based on the valuation of property computed by the county auditor for real estate tax purposes. We find that the appellees did not run afoul of this statute because there is ample evidence in the record to show that the assessments were based on the actual value of the subject properties. The record before us indicates that the testimony on tax valuation was not the sole valuation testimony. As pointed out by the court of appeals, several property owners within the projects' area testified that the fair market value of their properties exceeded the amount of the assessments by three times. In affirming the lower courts on this and the other aspects surrounding the notice issue whereby appellants seek to avoid payment on the assessments entirely, we endorse the appellate court's conclusion that "[a]ppellants must not be permitted to avoid the costs of benefits they willingly received."

Turning our focus to the next issue presented, the appellees on cross-appeal contend that the weight of evidence supports the trial court's finding that the city properly used and accounted for the federal funds involved in the projects. We disagree, and uphold the court of appeals' reversal and remand with the express direction that the trial court deduct the sum of $403,982.60 from the total assessment costs and modify each landowner's assessment in proportion to the relative costs of the project in his or her area.

In *Boellner* v. *Maumee* (1974), 39 Ohio St. 2d 47 [68 O.O.2d 27], we stated at 50 and 51:

"* * * The obvious objective of special assessment statutes, such as those in R.C. Chapter 727, is to allow a municipality to reimburse its treasury for expenditures actually made. *Stockdale Borough* v. *Astle* (1963), 410 Pa. 257, 189 A.2d 152. If a city were allowed to assess property owners for the total cost of an improvement, without reduction for funds received from other sources such as county, state or federal agencies, the city would reap a financial windfall at the expense of the assessed property owners. Such a result would also be contrary to the rule that a special assessment is valid only if the funds collected thereunder are used for the project for which the assessment was levied. See *Butler* v. *Toledo* (1855), 5 Ohio St. 225. Therefore, this court holds that the R.C. 727.05 phrase, 'total cost of improvements for which special assessments are levied,' means only those costs for which the city is responsible."

We find that *Boellner* is directly applicable to the case at bar, and further, we adopt the analysis rendered by Judge Stephenson in his concurring opinion below, with respect to this issue:

"* * * The city received approximately $1,253,000.00 in federal grants. The city used some odd $324,000.00 for start-up and miscellaneous costs, which were not the subject of any dispute in this litigation. The city used the remaining $929,000.00 to pay off four contracts. The city accounted for roughly $525,000.00 of these funds ($410,000.00 on Ninth

Street Project and $115,000.00 on Twelfth Street work) as the city's costs and offset that amount (i.e., $525,000.00) from the total cost of the project. The remaining difference between the $929,000.00 in federal funds used to pay on the contracts and the $525,000.00 which was offset from the total cost amounted to roughly $404,000.00. This amount was never deducted from the total cost of the project and, thus, appellants were assessed an additional $404,000.00. It appears from the record that the city intended to hold this sum, still assess the landowners for it and then use the $404,000.00 they had reserved for assessment relief."

Since appellees' actions here amount to a violation of R.C. 727.05 and are contrary to our prior pronouncement in *Boellner*, we affirm the court of appeals on the federal funds issue, and remand the matter to the trial court in accordance with the instructions heretofore indicated.

The final issue submitted for our consideration is whether the trial court erred in denying the appellant landowners the right to present evidence of alleged damages to their properties caused by the street projects. The appellees, on cross-appeal, contend that R.C. 727.18 estops appellants from coming forward with evidence of damages, since appellants did not file claims of such damages within two weeks from the date of completion of the notice required under R.C. 727.13.

In reviewing appellees' contention on this issue, it seems ironic to this court that appellees would argue for an equitable and less restrictive interpretation of the notice provisions and then turn around and contend that R.C. 727.18 should be strictly construed, thus denying appellants the opportunity to present evidence concerning alleged damages to their properties.

R.C. 727.18 provides in relevant part:

"An owner * * * claiming that he will sustain damages by reason of a proposed public improvement * * * shall, within two weeks from the date of completion of the notice required under section 727.13 of the Revised Code, file a claim in writing with the clerk of the legislative authority of the municipal corporation, setting forth the amount of the damages claimed and a general description of the property with respect to which it is claimed such damages will accrue. An owner who fails to file such a claim, shall be deemed to have waived damages and shall be barred from filing a claim or receiving damages. *This section applies to all damages which will obviously result from the improvement, but shall not deprive the owner of his right to recover damages arising, without his fault, from the acts of the municipal corporation or its agents.* * * *" (Emphasis added.)

Based on this statute, we concur with the reasoning of the court of appeals below in finding that a distinction must be drawn between damages that will obviously result from an improvement (*e.g.,* removal of shrubbery) and damages resulting from work negligently performed. A strict application of R.C. 727.18 would effectively foreclose any opportunity to redress alleged damages which, on their face, were incurred outside the

scope of the statute. Since the allegation of damages is for those damages purported to have occurred during the performance of the construction, we affirm the court of appeals' reversal and remand to allow appellants the opportunity to present evidence of alleged damages within this circumstance. A contrary holding on this point might very well ignore the situation where a property owner is eventually assessed an amount greater than the benefits conferred by the improvements, because his claimed damages were sustained outside the breadth of R.C. 727.18.

In summary, we affirm the court of appeals majority on each and every aspect decided in this complex controversy. On remand, the trial court is instructed to carry out the explicit directions with respect to the calculation of the assessments in light of the federal funds received by appellees; and to also allow appellants the occasion to present evidence concerning damages alleged to have been caused by negligent construction.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.